IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES BAUGHN. | Case No.: 3:25-cv-00305-AN |
| Plaintiff, | |
| v. | |
| | OPINION AND ORDER |
| DANIEL P. DRISCOLL, in his official capacity as Secretary of the United States Department of the Army, | |
| Defendant. | |

Plaintiff James Baughn brings this action against defendant Daniel P. Driscoll, in his official capacity as Secretary of the United States Department of the Army, for alleged disability discrimination, retaliation, hostile work environment, and failure to accommodate under either one or both of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* Defendant moves this Court to dismiss plaintiff's complaint for failure to state a claim. For the reasons set forth below, defendant's motion is GRANTED, and plaintiff's complaint is DISMISSED without prejudice and with leave to amend.

## LEGAL STANDARD

A complaint may be dismissed for failure to state a claim "'where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.'" *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On the other hand, a complaint should not be dismissed when it "contain[s] sufficient factual matter to state a facially plausible claim to relief." *Id.* "A complaint need not state 'detailed factual allegations'" to meet this standard, "but must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible

when a plaintiff includes sufficient factual matter for the court to reasonably infer the defendant is liable for the alleged claims. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting *Bell Atl. Corp.*, 550 U.S. at 556)). While a plaintiff need not include "detailed factual allegations," they must provide more than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555.

A plaintiff's factual allegations are entitled to a presumption of truthfulness, and the court must construe these facts "in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, a court need not presume a plaintiff's allegations are true when they "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* To be entitled to a court's presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A court's review on a motion to dismiss is generally limited to the plaintiff's complaint. Fed. R. Civ. P. 12(b)(6), (d); *Daniels-Hall*, 629 F.3d at 998. However, a court can review materials "attached to the complaint," "incorporated by reference" into the complaint, or subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document may be incorporated by reference if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Incorporation by reference may also be appropriate when a "document forms the basis of the plaintiff's claim," even if it is not directly referred to in the complaint. *Ritchie*, 342 F.3d at 908. A court may also take judicial notice of indisputable adjudicative facts, which include "'records and reports of administrative bodies.'" *Id.* at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

When granting a motion to dismiss, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be

cured by the allegation of other facts.'" *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).

# BACKGROUND

## A.    Factual Background

### 1.    *Plaintiff's Factual Allegations*

At all relevant times, plaintiff was employed as a crane operator by the United States Army Corps of Engineers ("the Agency"). Compl., ECF [1], ¶ 5. Plaintiff has a heart condition that includes atrial fibrillation. *Id.* ¶ 8. In 2000, plaintiff underwent open-heart surgery for this condition. *Id.* ¶ 9. Plaintiff "has been open about his heart condition with the Agency" and has previously received light duty assignments to accommodate his health. *Id.*

Around March 5, 2018, plaintiff was involved in an incident where a crane he was operating "caused damage to another crane." *Id.* ¶ 10. This incident was investigated by the High Hazard Safety Team, who determined "that [p]laintiff was not responsible." *Id.* ¶ 11. "Despite this finding, . . . [p]laintiff was constantly harassed by his supervisors and coworkers about the incident." *Id.* ¶ 12. Plaintiff was also "assigned less desirable tasks and excluded from crane assignments," while his coworkers without disabilities were treated more favorably. *Id.* ¶ 13.

From March 11 to 25, 2019, plaintiff took leave from his employment due to atrial fibrillation. *Id.* ¶ 16. Upon his return, plaintiff provided the Agency "documentation from his doctors detailing his cardiac condition and recommending light duty with restrictions on lifting and pushing/pulling." *Id.* ¶ 17. On April 8, 2019, a "Light Duty Agreement" took effect, under which plaintiff was restricted "from lifting more than [twenty-five] pounds and pushing/pulling." *Id.* ¶ 18.

Around April 2019, plaintiff reported his concerns about his assigned duties to his "first-level supervisor," Christopher Lente, who responded, "If you don't like the duties you have been assigned, you can leave and go home." *Id.* ¶ 14 (internal quotations omitted). The next month, plaintiff alerted his "second-level supervisor," Bryan Hert, of his concerns, who responded that he "did not think that the duties were a problem." *Id.* ¶ 15.

On May 23, 2019, plaintiff was tasked with sweeping and cleaning the "Powerhouse roof," which required him to push and pull objects while in high temperatures, "aggravating his heart condition" and in violation of his light duty agreement. *Id.* ¶ 19. Plaintiff told his supervisors that the "assignment violated his medical restrictions," but they dismissed his concerns. *Id.* ¶ 20. Instead, plaintiff's supervisors told him that "if he did not perform the assigned duties, he could take leave and go home." *Id.* ¶ 21.

On August 27, 2019, plaintiff filed an Equal Employment Opportunity ("EEO") complaint, alleging disability discrimination and retaliation for engaging in protected activity, *i.e.*, requesting accommodations. *Id.* ¶¶ 24, 26. The Equal Employment Opportunity Commission ("EEOC") issued a final decision sometime thereafter, and less than ninety days later, plaintiff filed this action. *Id.* ¶ 27.

2.    *Administrative Materials*

Separate from plaintiff's allegations, defendant provides four documents from the administrative record in plaintiff's underlying EEO proceeding. *See* Decl. of Sarah Feldman Supp. Def. Mot. to Dismiss ("Feldman Decl."), ECF [16]. First, defendant attaches a January 8, 2019 "Letter of Caution" issued to plaintiff by Bryan Hert. *Id.* at Ex. 1. The Letter of Caution states that it is being issued as a result of the crane incident that occurred on March 5, 2018, wherein plaintiff "failed to see and respond to signals from [his] Rigger to stop." *Id.* It goes on to say that plaintiff's "continued operation of the crane after [he] lost the ability to transmit signals with [his] signal person, and the subsequent accident, demonstrate a failure to abide by the[] safety regulations." *Id.* It "caution[s]" plaintiff that "continued failure to follow safety regulations will result in progressive disciplinary action," and that the letter "will remain in effect for one year, as a record of informal discipline" but "will not be placed in [his] Official Personnel File." *Id.*

Second, defendant attaches three Light Duty Agreements, respectively dated April 8, 2019 (the "April 8 Agreement"); April 10, 2019 (the "April 10 Agreement"); and May 22, 2019 (the "May 22 Agreement") (together, the "Agreements"). *Id.* at Ex. 2. In relevant part, the April 8 Agreement provides that plaintiff is restricted from "lifting greater than [twenty-five pounds]" and from "pushing/pulling" as a "response to [his] medical restrictions." *Id.* at Ex. 2 at 3. The April 10 Agreement provides the same

4

restrictions. *Id.* at Ex. 2 at 2. Lastly, the May 22 Agreement provides that plaintiff is only restricted from "lifting over [twenty-five] pounds." *Id.* at Ex. 2 at 1.

**B.     Procedural Background**

Plaintiff filed his complaint on September 25, 2024, alleging disability discrimination, retaliation, hostile work environment, and failure to accommodate claims under Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act. Compl., ECF [1], ¶¶ 28-45. On May 2, 2025, defendant filed a motion to dismiss for failure to state a claim. Def. Mot. to Dismiss ("Def. Mot."), ECF [15]. Plaintiff filed his response on August 4, 2025. Pl. Resp. to Def. Mot. ("Pl. Resp."), ECF [26]. Defendant filed a reply on August 25, 2025. Def. Reply Supp. Def. Mot ("Def. Reply"), ECF [29].

## DISCUSSION

As discussed below, the factual allegations in plaintiff's complaint are insufficient to state a claim for any of his identified causes of action: disability discrimination, retaliation, hostile work environment, and failure to accommodate under either one or both of the Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act.

**A.     Extra-Pleading Materials**

As a preliminary matter, the Court will consider both plaintiff's allegations and the administrative documents submitted by defendant. Beyond the facts contained in the pleadings, "a court may take judicial notice of 'records and reports of administrative bodies.'" *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (quoting *Interstate Nat. Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). A court may therefore consider documents submitted in an underlying administrative proceeding in reviewing a motion to dismiss. *Id.*; *see Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) ("In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record.").

However, those are the only extra-pleading materials that the Court may rightfully consider

here. Plaintiff includes numerous additional allegations in his opposition to defendant's motion to dismiss, but the Court does not consider these for purposes of ruling on this instant motion. As noted above, a court's scope of review for a motion to dismiss is generally limited to the complaint, *Daniels-Hall*, 629 F.3d at 998, though a court may also properly consider materials attached to the complaint, incorporated by reference into the complaint, or subject to judicial notice, *Ritchie*, 342 F.3d at 908 (9th Cir. 2003). The additional allegations in plaintiff's opposition do not fall into any of these recognized categories.

B.      **Analysis of Plaintiff's Claims**

        1.      *Disability Discrimination*

                Plaintiff's allegations are insufficient to state a claim for disability discrimination under the Rehabilitation Act, and his claim must therefore be dismissed.

                Federal employees must bring disability discrimination claims through the Rehabilitation Act, which in turn must be analyzed under the standards set by the Americans with Disabilities Act. *See Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985); *see also Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 940 (9th Cir. 2009) To state a disability discrimination claim for disparate treatment under the Rehabilitation Act, "a plaintiff must demonstrate that (1) [they are] a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of [their] disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by statute on other grounds as stated in Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018); *see Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 954 (9th Cir. 2020). Disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "A qualified individual with a disability is defined as an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (citation and internal quotations omitted); *see* 29 C.F.R. § 1630.2(m). As for the causation requirement, a plaintiff "must show that [they were] discriminated against solely on the basis of [their] disability." *Mustafa v. Clark*

*Cnty. Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998) (per curiam). In other words, the disability must be a "but for" cause of the discrimination. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).

Here, plaintiff adequately alleges that he is an individual with a disability, but he does not sufficiently allege that he is qualified for employment or that he was discriminated against because of his disability. Plaintiff alleges that he is disabled due to his heart condition that includes atrial fibrillation. Compl. ¶ 8. There is no question that atrial fibrillation is a physical impairment, and plaintiff reasonably alleges that this disability substantially limits major life activities, including "working and performing manual tasks." *Id.* However, plaintiff does not allege facts showing that he can perform the essential functions of his crane operator position with or without accommodation. All that plaintiff includes is a conclusory allegation that he "was qualified for his position and could perform the essential functions of his job with or without reasonable accommodation." *Id.* ¶ 30. More is needed than mere conclusory reiterations of the legal elements. *See Bell Atl. Corp.*, 550 U.S. at 555 (noting that a well-pleaded claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Plaintiff does allege that he previously received light duty assignments to accommodate his disability, *id.* ¶¶ 17-18, but even if the Court were to infer his capability from those accommodations, plaintiff's claim still must fail for a lack of causation.

It is not entirely clear what discriminatory action plaintiff allegedly suffered. Plaintiff alleges that he was "assigned less desirable tasks and excluded from crane assignments," suffered "constant harassment about the crane incident," and was assigned "duties outside his medical restrictions."[1] *Id.* ¶¶ 13, 31. Whichever action is at issue, the outcome is the same: plaintiff does not adequately allege that his disability was the cause of any alleged discrimination. Evidence from the administrative record shows that plaintiff may well have been excluded from crane assignments, and thus assigned less desirable work, because he failed to abide by safety regulations. *See* Feldman Decl. Ex. 1. As to the "duties outside" of

---

[1] In his opposition, plaintiff also mentions being "subjected to an involuntary removal" and states that the removal was "misclassified . . . as a misconduct separation." Pl. Resp. 2, 9. However, neither of these issues are alleged in the complaint.

plaintiff's "medical restrictions," *id.* ¶ 31, it appears that plaintiff is describing the roof cleaning assignment on March 23, 2019, *see id.* ¶ 19. But it does not appear that this assignment was given to violate plaintiff's medical restrictions—in fact, it does not appear that this assignment violated plaintiff's operative light duty agreement at all. Although the initial April 10 Agreement did restrict plaintiff from pushing and pulling, the pushing and pulling restriction was not included in the superseding May 22 Agreement. *See id.* at Exs. 1, 2. Accordingly, by May 23, 2019, plaintiff was no longer restricted from pushing and pulling. It therefore does not appear that plaintiff's roof cleaning assignment on May 23, 2019, was in violation of his accommodations. *See* Compl. ¶ 19.

To the extent any of these incidents could be considered adverse employment actions, the allegations in the complaint are insufficient to conclude there is any causal relationship between the incidents and plaintiff's disability. Without more, these conclusory allegations fall short of stating a disability discrimination claim.

2.     *Retaliation*

Plaintiff's retaliation claim is not cognizable under Title VII. Additionally, plaintiff's allegations are insufficient to state a claim to retaliation under the Rehabilitation Act. Thus, plaintiff's retaliation claim must be dismissed.

Retaliation claims under the Rehabilitation Act are analyzed under the same legal standard as Title VII claims. *Scott v. Mabus*, 618 Fed. App'x 897, 901 (9th Cir. 2015); *see Coons v. Sec'y of U.S. Dept. of Treas.*, 383 F.3d 879, 884 (9th Cir. 2004). However, claims under Title VII only apply to individuals subject to unlawful discrimination "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Accordingly, because plaintiff is alleging retaliation for conduct related to his status as an individual with a disability, and not because of any of the protected categories covered by Title VII, plaintiff's retaliation claim is only properly brought under Section 504 of the Rehabilitation Act. *See Coons*, 383 F.3d at 884; *see also Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

To state a retaliation claim under the Rehabilitation Act, an employee must allege "that

(1) [they] engaged in a protected activity; (2) [their] employer subjected [them] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *accord Coons*, 383 F.3d at 887 (citation omitted).  Protected activities include conduct that opposes unlawful discrimination, such as filing EEO complaints and union grievances. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("Pursuing one's rights under the [Americans with Disabilities Act ('ADA')] constitutes a protected activity."); *see also Williams v. O'Neill*, 23 Fed. App'x 738, 740 (9th Cir. 2001) (stating that "an individual who opposes discrimination because of a disability by filing a complaint . . . engages in activity protected by the Rehabilitation Act."); *and see Puletasi v. Wills*, 290 Fed. App'x 14, 18 (9th Cir. 2008) (citing 42 U.S.C. § 12203(a)) (stating that employers are prohibited from "retaliat[ing] against individuals who oppose discriminatory acts or practices.").  Any action that is "'reasonably likely to deter employees from engaging in protected activity'" is an adverse employment action.  *Pardi*, 389 F.3d at 850 (quoting *Ray*, 217 F.3d at 1243).

To establish causation, a plaintiff must show that but for their participation in a protected activity, the employer would not have made a retaliatory employment decision.  *Murray*, 934 F.3d at 1105-07; *see Meyer v. DeJoy*, No. 20-16833, 2022 WL 3334981, at *2 (9th Cir. Aug. 12, 2022).  Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the alleged retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  *Cf. Coons*, 383 F.3d at 887 (finding that an accommodation request made a year before plaintiff's demotion was insufficient to establish a causal link for his retaliation claim).  "While [a] lack of temporal proximity is not dispositive on its own, a plaintiff must offer evidence to support the inference of a retaliatory motive, such as circumstantial evidence of a pattern of antagonism following the protected conduct." *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1182 (N.D. Cal. 2014) (internal quotations omitted) (quoting *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)).

Plaintiff falls short of stating a plausible claim to relief for retaliation under the Rehabilitation Act.  Plaintiff alleges he was assigned duties outside of his medical restrictions and light

duty agreement as retaliation for his "prior EEO activity and because of his disability." Compl. ¶ 23. But the only example plaintiff provides of these inappropriate work assignments is his assignment to clean the powerhouse roof on May 23, 2019. *See id.* ¶ 19. As explained above, it appears that this assignment did not violate the operative light duty agreement that went into effect on May 22, 2019. *See* Feldman Decl. Ex. 1. Additionally, plaintiff's allegations are insufficient to establish causation between his alleged protected activity and the Agency's allegedly retaliatory conduct. As to the protected activity, plaintiff specifically alleges that he filed an EEO complaint in August of 2019, but he does not include any information about his "prior protected EEO activity" beyond that. Compl. ¶ 26. This filing cannot support plaintiff's retaliation claim because plaintiff was assigned to clean the powerhouse roof, the alleged adverse employment action, *before* plaintiff filed his EEO complaint, the alleged protected activity. While plaintiff claims he "believes he was assigned these duties in retaliation for prior EEO activity and because of his disability," *id.* ¶ 23, this conclusory statement falls short of the factual allegations needed to show that plaintiff is entitled to relief, *see Bell Atl. Corp.*, 550 U.S. at 555; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Thus, plaintiff's retaliation claim fails.

3.    *Hostile Work Environment*

Plaintiff fails to meet his pleading burden for his hostile work environment claim under the Rehabilitation Act, and thus, his claim cannot advance.

To successfully plead a plausible hostile work environment claim, a plaintiff "must allege that [they were] subjected to harassment because of [their] disability, and that the harassing 'conduct was sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive work environment.'" *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (quoting *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003)). A plaintiff must "allege a plausible causal nexus between the claimed harassment and [their] disabilities." *Id.* at 1175. Additionally, whether a plaintiff experienced conduct that was "'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment,'" *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (quoting *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007)), ultimately depends on "all the

circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citation and internal quotations omitted).  "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim . . . but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017) (alteration in original) (quoting *Faragher*, 524 U.S. at 788).

Here, plaintiff fails to sufficiently plead that he suffered a hostile work environment because of his disability.  First, plaintiff does not provide sufficient allegations to establish a causal nexus between his supervisor and coworkers' alleged conduct and his disability.  Plaintiff alleges that following his involvement with the crane incident in 2018, he was "constantly harassed by his supervisors and coworkers about the incident."  Compl. ¶ 12.  But, as described above, plaintiff's complaint does not include allegations that link this purported harassment to his disability.

Second, plaintiff does not allege that his harassment was severe or pervasive enough to alter the conditions of his employment.  Although plaintiff alleges that the harassment was "constant," he does not include further information regarding the kind of harassment he experienced, when and how often it occurred, or how it affected his working conditions.  *Id.*  Plaintiff's allegations that he "was subjected to unwelcome harassment based on his disability, creating a hostile work environment" and that "[t]he harassment was severe and pervasive, interfering with [p]laintiff's work performance and creating an abusive work environment" are merely conclusory and are therefore insufficient to state his claim.  *Id.* ¶¶ 39-40.  Plaintiff has therefore failed to plead a plausible hostile work environment claim.

4.    *Failure to Accommodate*

Finally, plaintiff did not sufficiently allege a failure to accommodate claim under the Rehabilitation Act.  To state a disability discrimination claim based on failure to accommodate, an employee must allege "(1) that he had a disability within the meaning of the Rehabilitation Act; (2) that the employer had notice of his disability; (3) that he could perform the essential functions of his job with a

reasonable accommodation; and (4) that the employer refused to provide a reasonable accommodation." *Bailey v. Mount Diablo Unified Sch. Dist.*, No. 24-cv-00188-CRB, 2024 WL 3678015, at *2 (N.D. Cal. Aug. 5, 2024) (citing *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2002)). "Reasonable accommodations are mechanisms to remove barriers or provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001).

Plaintiff's failure to accommodate claim fails for many of the same reasons discussed above. Additionally, plaintiff does not allege that there exists a reasonable accommodation that would enable him to perform the essential functions of his position. To the extent that the light duty accommodations meet this requirement, plaintiff has not shown that the Agency failed to abide by these restrictions, as described above. Without more, plaintiff falls short of stating this claim.

## CONCLUSION

The allegations contained in plaintiff's complaint are insufficient to support any of his claims. Defendant's motion to dismiss is therefore GRANTED and plaintiff's complaint is DISMISSED. Because it appears plaintiff's pleading deficiencies could possibly be remedied through amendment, the Court dismisses plaintiff's claims without prejudice and with leave to amend. *See Doe*, 58 F.3d at 497 (internal citation and quotations omitted) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."). Any amended complaint must be filed within thirty (30) days of the date of this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of December, 2025.

Adrienne Nelson
United States District Judge